UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
IN RE APPLICATION OF HIGINI CIERCO NOGUER,                              :    18-MC-498 (JMF)
RAMÓN CIERCO NOGUER, AND JOAN PAU                                       :
MIQUEL PRATS FOR JUDICIAL ASSISTANCE                                    :    OPINION AND ORDER
PURSUANT TO 28 U.S.C. § 1782                                            :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

On October 31, 2018, Petitioners Higini Cierco Noguer, Ramón Cierco Noguer, and Joan Pau Miquel Prats ("Petitioners") brought an application, pursuant to 28 U.S.C. § 1782, seeking discovery from Respondent J.C. Flowers & Co. ("JCF") for use in proceedings in Andorra. Noting that the Andorran Magistracy Court had dismissed Petitioners' suit after they filed their application here, JCF opposed the application on the ground that Petitioners could no longer satisfy the "for use" requirement of Section 1782. Docket No. 24, at 12. In response, Petitioners contended that they could use the materials in connection with their now-pending appeal from the Andorran Magistracy Court's ruling, citing a provision of Andorran law that appeared to allow submission of newly available evidence on appeal. Docket No. 29, at 3-5. On February 8, 2019, following oral argument, the Court granted Petitioners' application from the bench, but limited the scope of their request and directed the parties to negotiate a protective order, which has since been entered, curtailing Petitioners' use of any materials they receive from JCF. *See* Docket No. 48 ("Tr."), at 26-36; Docket No. 45 ("Protective Order"). Thereafter, JCF filed a notice of appeal, *see* Docket No. 34, and now seeks a stay pending appeal, *see* Docket No. 35; Docket No. 36 ("JCF Mem."). For the reasons that follow, JCF's motion is denied.

## DISCUSSION

The decision whether to stay an order pending appeal is guided by four familiar factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the

merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted); *see also Meyer v. Kalanick*, 203 F. Supp. 3d 393, 395 (S.D.N.Y. 2016) (noting that "the first and second factors are the most critical" of the four (internal quotation marks omitted)). Significantly, however, "[a] stay is an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks and citation omitted). Ultimately, the decision as to whether to grant a stay is committed to the Court's discretion. *See, e.g.*, *Meyer*, 203 F. Supp. 3d at 395. Measured against those familiar factors, JCF's motion for a stay falls short.

**A. JCF Fails to Make a Strong Showing that It Is Likely to Succeed on the Merits**

As an initial matter, JCF fails to make a "strong" showing that it is likely to succeed on the merits of its appeal. JCF argues, first, that it is likely to succeed on the merits because the Court applied the wrong standard to Petitioners' application. The Court held that Section 1782's "for use" requirement was satisfied here because Petitioners had invoked a provision of Andorran law that appears to permit the introduction of new evidence on appeal under certain circumstances, and Respondents had failed to offer "authoritative proof" to the contrary. Tr. 28-29 (citing *Euromepa S.A. v. R. Esmerian, Inc.* ("*Euromepa I*"), 51 F.3d 1095, 1100 (2d Cir. 1995)). According to JCF, that was wrong twice over: The Court was wrong to require so little of Petitioners and wrong to require that JCF rebut Petitioners' argument with "authoritative proof" when evaluating Section 1782's statutory requirements. *See* JCF Mem. 7-11.

To the extent that Respondent's arguments are premised on an assertion that the Court shifted the burden of proof away from Petitioners, they are altogether without foundation. *See* Tr. 30 (noting that it was Petitioners' burden to "point[] to a means by which they could inject the

2

materials into the foreign appellate proceedings"). There is also no merit to its argument that the Court applied the wrong standard. To be sure, despite the persistence of much factfinding vocabulary in this area, whether material qualifies as "for use" in a foreign proceeding is ultimately a question of foreign law and, thus, "must be treated as a . . . question of law." Fed. R. Civ. P. 44.1. And courts usually decide questions of foreign law in much the same way as questions of domestic law, albeit with more freedom to consider material not raised by the parties or otherwise admissible in evidence. *See, e.g.*, *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd.*, 138 S. Ct. 1865, 1872-73 (2018). But just because a court confronted with foreign legal questions "*may* consider any relevant material or source . . . whether or not submitted by a party," Fed. R. Civ. P. 44.1 (emphasis added), does not mean that it *must* do so — and, indeed, in the Section 1782 context, binding Second Circuit precedent discourages district courts from conducting full-blown Rule 44.1 analyses to determine whether discovery material qualifies as "for use" within the meaning of the statute. *See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 122 n.11 (2d Cir. 2015). Crucially, the Second Circuit has derived that principle *from the statute itself*, citing Section 1782's "overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants." *Euromepa I*, 51 F.3d at 1100 (internal quotation marks omitted). Accordingly, so long as a 1782 applicant has "establish[ed] that it will have *some means* of actually using the evidence in the foreign proceeding," *Certain Funds*, 798 F.3d at 122 n.11 (emphasis added), in the absence of "authoritative proof that a foreign tribunal would reject [the] evidence obtained," a district court should not reject a Section 1782 application on that ground, *Euromepa I*, 51 F.3d at 1100.

Recognizing that the Second Circuit has "warned that district courts should avoid inquiring into foreign evidentiary rules so as to keep the assessment of § 1782 applications from becoming a 'battle-by-affidavit of international legal experts,'" *Certain Funds*, 798 F.3d at 122 n.11 (first

citation omitted) (quoting *Euromepa I*, 51 F.3d at 1100), and that the Circuit has imposed the "authoritative proof" standard in service of that goal, *Euromepa I*, 51 F.3d at 1099, JCF does not argue that holding JCF's failure to introduce "authoritative proof" against it constituted impermissible burden-shifting. Instead, JCF urges that "[t]he 'authoritative proof' standard does not apply to a court's consideration of whether an applicant has established that the discovery is 'for use' in a foreign proceeding," and instead "speaks to the scope of a court's discretion to deny an application (typically considered by courts now as part of the second discretionary *Intel* factor)." JCF Mem. 10. JCF thus maintains the odd position that in enacting Section 1782, Congress forbade district courts from conducting time-consuming Rule 44.1 inquiries at one stage, while simultaneously *requiring* them to do so at another. That strange balance would make little sense in light of "section 1782's overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants." *Euromepa I*, 51 F.3d at 1100 (internal quotation marks omitted). Indeed, it would undermine that interest altogether. After all, if full-fledged Rule 44.1 inquiries were required to satisfy the statutory "for use" requirement, which applies in *every* Section 1782 case, it would achieve nothing to avoid such inquiries in the smaller subset of cases where similar issues are relevant to a court's discretionary analysis.

More importantly, JCF's position is inconsistent with the way the Second Circuit has itself understood and applied *Euromepa I* over the years. In *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012), for example, the Second Circuit held that a district court "should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application," *id.* at 82 (emphasis omitted), and reversed a district court decision that had erroneously construed the "for use" requirement to require such an analysis, *id.* at 84. In reaching that conclusion, the *Brandi-Dohrn* Court approvingly cited several cases from other Circuits — and explained that it was "join[ing]" those "sister Circuits" — that were even more

4

explicit in their reluctance to require full-on foreign law analyses. *See id.* at 82 (collecting cases); *see also, e.g.*, *In re Request for Judicial Assistance from the Seoul Dist. Criminal Ct.*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to . . . the admissibility before such tribunals of the testimony or material sought."). And, in a footnote to those citations, the Second Circuit approvingly cited a law review article's conclusions that "attempts by U.S. courts to construe foreign evidentiary codes and rules result[] in a gross waste of judicial resources, particularly where even experts on the foreign law in question often disagree on the potential admissibility of the evidence sought," and that "a clear danger to comity and international relations is presented where a court familiar with one system of law attempts to declare the meaning of the laws in another legal system." Brian Eric Bornstein & Julie M. Levitt, Comment, *Much Ado About 1782: A Look at Recent Problems with Discovery in the United States for Use in Foreign Litigation Under 28 U.S.C. § 1782*, 20 U. MIAMI INTER-AM. L. REV. 429, 454, 457 (1989), quoted in *Brandi-Dohrn*, 673 F.3d at 82 n.1.

A few years later, in *Certain Funds*, the Second Circuit reiterated its "warn[ing] that district courts should avoid inquiring into foreign evidentiary rules so as to keep the assessment of § 1782 applications from becoming a battle-by-affidavit of international legal experts." 798 F.3d at 122 n.11 (internal quotation marks and citation omitted). The *Certain Funds* Court distinguished the ultimate question of whether discovery materials are admissible in foreign proceedings from the question of whether there exists "some discernible procedural mechanism for introducing the evidence" in the foreign legal proceeding, and reaffirmed that it is the Section 1782 applicant's "burden . . . to establish that it will have some means of actually using the evidence in the foreign proceeding." *Id.* (internal quotation marks omitted). In so doing, however, the Second Circuit nowhere indicated that a district court's inquiry into foreign law should go beyond the limits that

5

the Circuit had set in its earlier cases. To the contrary, the *Certain Funds* Court emphasized that Section 1782 applicants need only "*identify* some 'discernible procedural mechanism' for introducing the evidence they [seek]," and that the relevant "inquiry is no more exacting than the Supreme Court's discussion of 'participation rights' in *Intel*," which consisted of a single passing reference to three pages in the record. *Id.* (emphasis added); *see In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14-CV-1801 (NRB), 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256-57 (2004).

In light of all that, it is of little consequence — and hardly surprising — that, at a later stage in the *Euromepa* litigation, the Second Circuit concluded (as the Court has done here) that the "for use" requirement requires a Section 1782 applicant to show that the foreign tribunal at issue will "take and hear new evidence" in at least some respect and that answering that question requires an analysis of foreign law. *See Euromepa, S.A. v. R. Esmerian, Inc.* ("*Euromepa II*"), 154 F.3d 24, 29 (2d Cir. 1998). In fact, mindful that *Euromepa II* predates the Second Circuit's extension of *Euromepa I*'s principles in *Brandi-Dohrn* and *Certain Funds*, *Euromepa II* nevertheless supports the approach the Court took here: In *Euromepa II*, the Second Circuit analyzed the foreign legal issue in a conclusory half sentence that — notably — did not look beyond the parties' submissions. *See id.* at 29 ("[T]he affidavits and other material submitted by the parties show that the French Supreme Court does not, in fact, take and hear new evidence."). In other words, the Second Circuit has never required a more searching analysis than the one the Court applied here; to the contrary, it has consistently "rejected . . . 'speculative forays into legal territories unfamiliar to federal judges,' because [s]uch a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute." *Mees v. Buiter*, 793 F.3d 291, 298-99 (2d Cir. 2015) (quoting *Euromepa I*, 51 F.3d at 1099-1100).

6

The remainder of JCF's arguments with respect to the prospects of its success on appeal either misconstrue or misunderstand the Court's holdings. For example, the Court did not "merely accept[] Petitioners' statement of law." JCF Mem. 11; *see also id.* at 9. Instead, it reviewed the parties' submissions — including a provision of the Andorran Code of Criminal Procedure submitted by JCF itself, but which JCF had neglected to mention in opposing Petitioners' application, *see* Docket No. 25-3, at 3 — and concluded that Petitioners had carried their burden of identifying a "discernible procedural mechanism" for introducing the evidence they seek in the Andorran appellate proceedings. Nor did the Court conclude, as JCF suggests, that "it was sufficient" for Petitioners "merely to 'point to' a provision suggesting they have the ability to introduce new evidence on appeal without making any affirmative showing that the cited provision *actually applies* to their Appeal." Docket No. 46 ("JCF Reply"), at 3 (citation omitted). Instead, the Court looked to the text and surrounding context *of the Andorran provision itself*; concluded that, "on its face," it "seems to leave the door open to offering [the new] evidence on appeal"; and — in light of JCF's failure to respond with anything more persuasive than unsupported assertions at oral argument — concluded that Petitioners had satisfied their burden. Tr. 29-30; *cf. Euromepa II*, 154 F.3d at 29 (resolving the question of French law in an analysis limited to the parties' submissions).

In the final analysis, what JCF seeks is an impermissible second bite at the apple, which would not even be countenanced in a motion for reconsideration. *See, e.g.*, *Analytical Surveys, Inc. v. Tonga Partners, LP*, 684 F.3d 36, 52 (2d Cir. 2012); *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2018 WL 3632500, at *1 (S.D.N.Y. July 30, 2018). JCF was on notice of Petitioners' contention that, following the Andorran Magistracy Court's dismissal, they could still use the materials they sought on appeal, and it had ample opportunity to explain to the Court why Petitioners were wrong. Tr. 30-31; *see* Docket No. 21 (December 18, 2019 letter from Petitioners'

7

counsel asserting that Petitioners would have "the right to introduce relevant evidence during the pendency of the appeal," and would use the material sought for that purpose).[1] Indeed, JCF now concedes that it filed its opposition "[a]nticipating" that argument. JCF Mem. 3. But all JCF submitted in support of its position was an expert declaration asserting that Article 194 of the Andorran Criminal Procedural Code — which is silent on the introduction of new evidence on appeal — prohibits the introduction of such evidence. Docket No. 25 ("Ambros Decl."), ¶ 35. Moreover, in their reply in support of the Petition, Petitioners pointed out — correctly — that on the very next page of JCF's own excerpt from the Andorran Criminal Procedure Code was a provision, Article 201.2, which provides a procedural mechanism for the introduction of evidence on appeal that "[w]as not possible to be included in the first instance." Docket No. 25-3, at 4; *see* Docket No. 29, at 3. Yet it was not until its *reply* in support of the present motion that JCF provided the Court with any demonstrable basis to believe that that provision might not apply to Petitioners' appeal.[2]

---

[1] In the wake of the Andorran Magistracy Court's ruling, the Court could certainly have required Petitioners to file a new petition seeking to use the materials sought in connection with the Andorran appellate proceedings. *See* Tr. 30. But given the time sensitivities involved in Petitioners' application, there were good reasons not to take that route. In any event, the parties fully briefed the relevant issues and, in that sense, gave "implied consent" to amendment of the petition (if such consent was required). Fed. R. Civ. P. 15(b)(2).

[2] In that sense, what JCF seeks is really a *third* bite at the apple. In connection with its opening brief in support of a stay, JCF submitted a second expert declaration, in which its Andorran-law expert claimed that Article 201.2 does not apply to Petitioners' appeal. *See* Docket No. 38 ("Ambros Supp. Decl."), ¶ 3; JCF Mem. 12-13. At bottom, however, that claim rested on little more than a conclusory assertion — no different from what counsel argued at oral argument, *see* Tr. 6-7, and contested by Petitioners, who have since submitted a new expert declaration of their own, *see* Docket No. 29, at 3; Docket No. 44-3, ¶ 6 — that there is a distinction between a "proceeding under Article 194" and a "proceeding under Article 201" because one appears in Chapter I and the other in Chapter II of Title 7 of the Andorran Criminal Procedure Code. *See* JCF Mem. 12; Ambros Supp. Decl. ¶ 2-3. It was not until its *reply* here that JCF submitted a *third* expert declaration, accompanied by a newer translation of Articles 194-203 that comes closer to supporting aspects of that argument (albeit not all of them). *See* Docket No. 47. Whatever the reason for that delay — remarkably, JCF blames it on "a clerical error," JCF Reply 7 n.6 — the fact is that the parties and the Court relied on the translation of Andorran law that JCF itself had submitted in connection with its initial submissions. It would be the height of unfairness to allow JCF to present "authoritative proof" for the first time in this posture, let alone on appeal, when it

8

In other words, JCF had, and waived, its chance to say more than it did on this question of Andorran law. JCF has accordingly failed to establish that it is likely to succeed on the merits of its appeal.

**B. The Remaining Factors Cut Against a Stay**

In any event, JCF fails to establish that it will be irreparably injured if it is forced to disclose the requested material before it has a chance to appeal the Court's decision. It is true, as the Court has previously observed, that, in many respects, "the proverbial bell cannot be unrung" once information has been disclosed. *In re Accent Delight Int'l Ltd.*, Nos. 16-MC-125, 16-MC-50 (JMF), 2018 WL 7473109, at *1 (S.D.N.Y. June 27, 2018). But that is true in most, if not all, Section 1782 cases (not to mention ordinary discovery orders). The mere fact that information, once disclosed, cannot be "undisclosed" is therefore not enough by itself to warrant a finding of irreparable harm. *See, e.g.*, *In re Platinum Partners Value Arbitrage Fund LP*, No. 18-CV-5176 (DLC), 2018 WL 3207119, at *6 (S.D.N.Y. June 29, 2018) ("[A] requirement to produce documents, at least absent a claim of privilege or sensitivity, is not generally the type of injury that is irreparable."); *In re Gushlak*, No. 11-MC-0218 (NGG) (JO), 2012 WL 2564466, at *7 (E.D.N.Y. Jan. 30, 2012) (noting that "the compelled production of non-privileged discovery material, standing alone, does not constitute irreparable injury warranting a stay pending appeal" and collecting cases), *report and recommendation adopted,* No. 11-MC-218 (NGG), 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012); *see also, e.g.*, *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (holding that, even where the disclosure of trade secrets is at issue, irreparable harm is not to be presumed absent a showing that "a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair

---

had ample opportunity to do so in a timely fashion. *Cf. G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018) (noting that it is the parties' obligation "to provide the district court with the information needed to determine the meaning of the foreign law" at issue).

the value of those secrets"). And, in light of the Protective Order — which severely curtails what Petitioners may do with any materials they obtain — JCF fails to establish the likelihood of harms, let alone irreparable harms, other than mere disclosure. *See* Protective Order ¶ 2 (providing that any confidential material cannot be used beyond the Andorran proceedings, including to bring any claims against JCF, absent further order of the Court); *id.* ¶ 6 (restricting access to confidential material and requiring Petitioners to seek leave to file the material under seal in the Andorran proceedings); *id.* ¶ 12 (requiring Petitioners to return all material produced in response to the subpoena and requiring any person who has received electronic copies of such material to destroy them, within fourteen days of the conclusion of the Andorran proceedings).

If anything, it is *Petitioners* who may suffer irreparable harm — and thus be "substantially injure[d]," *Nken*, 556 U.S. at 434 — if a stay *is* granted. That is because, with a stay pending appeal here, Petitioners may lose altogether any chance to use the materials they seek in the Andorran appellate proceedings. The risk is illustrated by the earlier proceedings in this very case: Before this Court could act on Petitioners' original request (in no small part because the Court chose to afford JCF an opportunity to respond to that request rather than granting the request *ex parte*, *see* Docket No. 6 (noting that "[a]lthough the Court has authority to address the Application *ex parte*, the Court will not do so absent a demonstrated basis," and directing service on JCF absent the showing of such a basis (citation omitted))), the Andorran Magistracy Court denied their petition. Further delay would thus risk depriving Petitioners of their second and final chance to present any new evidence to the Andorran courts. Accordingly, the third and fourth stay factors — "whether issuance of the stay will substantially injure the other parties interested in the proceeding" and "where the public interest lies," *Nken*, 556 U.S. at 434 — favor Petitioners. *See, e.g.*, *In re Gushlak*, 2012 WL 2564466, at *7 ("[I]f this court grants the requested stay, the Applicant runs the risk that the [foreign proceeding] may be brought to a close without the discovery.")

## CONCLUSION

For the reasons stated above, JCF has not demonstrated that a stay of this Court's order granting Petitioners' Section 1782 application is warranted. Its motion for a stay pending appeal is therefore DENIED.

SO ORDERED.

Dated: March 5, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge